BEFORE THE UNITED STATES JUDICIAL
PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: AT&T INC. CELLULAR CUSTOMER DATA SECURITY BREACH LITIGATION | MDL 3124 |
| IN RE: SNOWFLAKE, INC., DATA SECURITY BREACH LITIGATION | MDL 3126 |

**RESPONSE SUPPORTING IN PART AND OPPOSING IN PART THE MOTIONS TO TRANSFER BY INTERESTED PARTY AND COURT-APPOINTED LEADERSHIP FOR *IN RE: AT&T, INC. CUSTOMER DATA SECURITY BREACH LITIGATION*__**

I.  PRELIMINARY STATEMENT

Lead Counsel and the Executive and Steering Committees for the putative classes in *In re: AT&T, Inc. Customer Data Security Breach Litigation*, No. 3:24-md-03114-E (N.D. Texas) (MDL 3114) ("First AT&T MDL") submit this response as an Interested Party supporting the transfer of MDL 3124 ("Second AT&T MDL"), but to the Northern District of Texas, for the coordination or consolidation of pre-trial proceedings with the First AT&T MDL, and opposing the transfer of MDL 3126 ("Snowflake MDL") as to the AT&T data breaches. As detailed herein, the putative class members of the Second AT&T MDL overlap with millions of wireless customers who are already putative class members in the First AT&T MDL and are represented by counsel appointed in that action. Because many of the legal and factual issues relating to these class members are identical, *i.e.* AT&T's duty to safeguard customer information and alleged negligent conduct, there is no persuasive justification to split the AT&T actions in two. The AT&T MDLs (3114 and 3124) concern similar negligence claims arising out of AT&T's lapse in data security on behalf of

millions of the same class members, and potentially caused by the same threat actor. Indeed, consolidating the First AT&T MDL and the Second AT&T MDLs will result in the discovery efficiencies espoused by the Panel, *e.g.*, the same witnesses are likely to be deposed regarding AT&T's security measures, including the executives who were responsible for those security decisions, as well the production of overlapping, if not a practically identical, electronic discovery. Thus, the more sensible course is to send all of the actions involving AT&T to the existing MDL already underway in the Northern District of Texas before the Honorable Ada Brown. That outcome will undoubtedly lessen discovery, avoid duplication of effort, and fulfill the primary purpose of every MDL - efficiency.

Accordingly, AT&T Plaintiffs in the First AT&T MDL oppose the transfer of any actions involving the AT&T data breaches to Montana or North Carolina because those venues have no connection at all to any case involving AT&T. As AT&T argued in the First AT&T MDL, the Northern District of Texas is the clear center of gravity for AT&T. Coordinating all of the actions involving AT&T's data breach cases in the Second AT&T MDL with the First AT&T MDL represents a far more advantageous outcome for the parties and witnesses. It will best promote just and efficient pre-trial proceedings rather than litigating those same issues in two MDLs before different judges. For this reason, AT&T Plaintiffs support consolidation and transfer of all AT&T actions to the Northern District of Texas (3114 and 3124) and oppose the consolidation of the Snowflake MDL (MDL 3126) with any AT&T action, consistent with the positions of Plaintiffs Olivieri and Woon in their response in opposition to transfer.[1] *See* MDL 3126, Dkt. 99.

---

[1] Likewise, Defendant Snowflake filed a motion in all the cases in Montana to consolidate those cases and sever any non-Snowflake defendants from those cases so that those defendants can be sent elsewhere. *See Leal v. Snowflake, Inc.*, Civil Action No. 2:24-cv-00046-BM, Dkt. 22 (D. Mont.) ("The claims against the customers are of a different nature than those against Snowflake. Recognizing this, a few plaintiffs who had originally sued Snowflake and a customer as co-

## II.     FACTUAL BACKGROUND

On March 30, 2024, AT&T announced that the Personal Information[2] of 73 million current and former customers of AT&T, including login credentials, had been obtained by Shiny Hunters ("Threat Actor") and disclosed on the dark web ("AT&T's First Breach"). MDL 3114, Dkt. 115-2 ¶ 48. AT&T's First Breach may have started from an undisclosed "vendor," and AT&T announced undertaking a "robust investigation" in response.[3]  On the heels of AT&T's announcement, CNN reported that "[d]etails of the leaked data first appeared online in August 2021, when a known threat actor, Shiny Hunters, offered up the records for sale on a hacking forum, with a 'buy it now 'price of one million dollars." MDL 3114, Dkt. 115-2 at fn 3. Soon after, dozens of lawsuits were filed, and on June 5, 2024, the Panel transferred and consolidated the actions in the Northern District of Texas before Judge Ada Brown. *Id.*, Dkt. 139 ("Transfer Order").

***Less than three weeks*** after AT&T announced its investigation, AT&T discovered a second cybersecurity incident caused by the ***same Threat Actor*** originating with its vendor, Snowflake. MDL 3114, Dkt. 115-2 ¶ 3; MDL 3124, Dkt. 1-6 ¶ 37. This second incident includes records of calls and texts of nearly all of AT&T's wireless customers from May 1, 2022, to October 31, 2022, as well as other information per its announcement. *Id.* AT&T announced this incident on July 12, 2024, and within two weeks, Plaintiffs Young and Crawford filed lawsuits against

---

defendants have since decided to voluntarily sever the claims into separate actions against each defendant."). The court has set a hearing on that motion for September 12, 2024. *Id.* Dkt. 24.

   [2] The "Personal Information" disclosed includes Social Security Numbers, passcodes, full names, email addresses, mailing addresses, phone numbers, dates of birth, account numbers, and other information to be determined during discovery.

   [3] *See* AT&T, *AT&T Addresses Recent Data Set Released on the Dark Web* (Mar. 30, 2024), available at: https://about.att.com/story/2024/addressing-data-set-released-on-dark-web.html.

AT&T and moved to transfer to the Northern District of Georgia, creating the Second AT&T MDL.[4] MDL 3124, Dkt. 1-1. Two days later, Plaintiff Chaidez filed a broader motion to consolidate all Snowflake-related cases, including and subsuming those in the Second AT&T MDL in the District of Montana, creating the Snowflake MDL. MDL 3126, Dkt. 1-1.

A critical fact of the Snowflake Breach is that Snowflake's security systems for its servers were not breached; rather, vulnerabilities in AT&T's administrative controls over access to information housed at Snowflake were compromised, as were the administrative controls over access for the other Snowflake customers at issue here, including Ticketmaster, Advanced Auto Parts, Neiman Marcus, LendingTree, and Cricket.[5] Snowflake has over 9,000 customers, yet the Threat Actor compromised only a fraction of these—at most 165 customers—who appear to have failed to establish secure administrative controls.[6] For this case, what Snowflake did or did not do recedes in importance compared to what each customer did or did not do to protect the information housed on Snowflake servers.[7] For this reason, this case is distinct from the *MoveIT* litigation,

---

[4] Plaintiff Young later sought to withdraw her motion to transfer. MDL 3124, Dkt. 33. On August 20, 2024, the Panel denied this withdrawal motion and ordered that MDL 3124, be considered together with the motion for centralization in MDL 3126, at the Panel hearing scheduled for September 26, 2024.

[5] Snowflake provides services to customers "under an agreement [] and solely for their benefit." Snowflake Privacy Notice, SNOWFLAKE (August 1, 2024), available at: https://www.snowflake.com/privacy-policy/. According to Snowflake, its customers are responsible for their data. *Id.*

[6] Brad Jones, *Detecting and Preventing Unauthorized User Access*, SNOWFLAKE (May 30, 2024; latest update: June 10, 2024), available at: https://snowflake.discourse.group/t/detecting-and-preventing-unauthorized-user-access/8967/1.

[7] Rather than the Second AT&T MDL being a "typical hub-and-spoke" action as championed by the movants, "initial reports tie the AT&T breach to a lack of multi-factor authentication applied to Snowflake accounts — which made the massive volume of AT&T customer data stored and processed in Snowflake more vulnerable to bad actors." *See* Megan Leader, *Supply Chain Nightmare: AT&T-Snowflake Breach Is What Keeps CISOs Up at Night*, VIRTU (July 12, 2024), available at: https://www.virtru.com/blog/cloud-security/att-snowflake-breach. MDL 3126, Dkt. 1-1 at 1. Accordingly, common questions will predominate through the First and Second AT&T

which was centralized correctly *en masse* for all MoveIT customers because there MoveIT was itself the unlocked door, and the acts of the MoveIT customer are mainly irrelevant to the fact of the breach. MDL 3126, Dkt. 99 at 3. Here, the opposite is true, and the underlying issues regarding AT&T's data security practices are central issues in the First AT&T MDL. Dividing the First AT&T MDL and Second AT&T MDL will only result in discovery duplication, inconsistent pretrial rulings, and a waste of the resources of the parties and the judiciary.

### III.   ARGUMENT

The Panel considers a host of non-dispositive factors when determining the most appropriate transferee forum under 28 U.S.C. § 1407(a). *See* MANUAL OF COMPLEX LITIGATION (FOURTH) § 20.131 (2004) (citing Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214-15 (1977)). Among these factors are (1) centrality; (2) location of evidence and witnesses; (3) overall docket conditions; (4) the pendency of other MDL matters; and (5) the overall experience of the Judge. *See* D. Herr, *Multidistrict Litigation Manual: Practice Before the Judicial Panel on Multidistrict Litigation* §§ 6:5, 6:7, 6:15, 6:17, 6:22 (2024 ed.). Four out of five of these factors point strongly to the Northern District of Texas as the most appropriate transferee forum for actions involving AT&T's data breaches. And while Montana may boast favorable docket statistics worthy of the Panel's consideration for Snowflake-only cases—given the already-pending First AT&T MDL—nothing warrants the transfer of AT&T data breach actions to Montana or any venue other than the Northern District of Texas.

What makes the Northern District of Texas the ideal forum for both AT&T data breaches

---

MDLs, such as: (1) whether AT&T failed to implement and maintain reasonable security procedures and practices; (2) whether AT&T owed a duty to safeguard Personal Information; (3) whether AT&T knew or should have known that their data security systems and monitoring processes were deficient; and (4) whether AT&T's conduct was negligent. Splintering the actions against AT&T will only lead to inefficiencies and the risk of inconsistent judgments.

is that, at their core, each of the actions will involve numerous "common questions of fact." *See* 28 U.S.C. § 1407. Indeed, none of the briefs undermine this core conclusion. Instead, they obscure the Panel's inquiry by pointing to other lesser factors. But these issues do not alter the key inquiry for the Panel: whether the transfer will "necessarily serve the convenience of the parties and witnesses or promote the just and efficient conduct of [the] litigation at the present time"? *In re Accutane Prods. Liab. Litig.*, 560 F. Supp. 2d 1370, 1370 (J.P.M.L. 2008); *see also In re Asbestos Bank. Litig.*, MDL No. 950, 1992 WL 423943, at *1 (J.P.M.L. Dec. 9, 1992) (same). Here, the answer to that question for AT&T-related data breaches is clearly "yes," and the ideal forum is the Northern District of Texas, the home district of AT&T.

While AT&T now presses for an alternative forum, AT&T reasonably championed the Northern District of Texas as the ideal venue for litigation concerning its first cybersecurity incident, citing its headquarters, the convenience for parties and witnesses, and the Court's capacity.[8] *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354-55 (J.P.M.L. 2016) (selecting transferee forum where key defendant's corporate headquarters were located because "relevant documents and witnesses are likely to be located there"); *In re Generali COVID-19 Travel Ins. Litig.*, 509 F. Supp. 3d 1365, 1367 (J.P.M.L. 2020) (transferring to the district where key defendants headquartered); *In re Home Depot, Inc., Customer Data Security Breach Litig.*, 65 F. Supp. 3d 1398, 1400 (J.P.M.L. 2014) (same); *In re Target Corp. Customer Data Sec. Breach Litig.*, 11 F. Supp. 3d 1338, 1339 (J.P.M.L. 2014) (same); *In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381 (J.P.M.L. 2013) (same). The same facts and reasoning support additional coordination of the Second AT&T MDL with the first in the Northern District of Texas now.

---

[8] *See* MDL 3114, Dkt. 66 at 6-7.

AT&T's specific reasons for requesting North Carolina are comparatively sparse and even more flimsy when viewed in comparison to AT&T's positions taken in connection with the creation of MDL 3114. While North Carolina may enjoy favorable "docket conditions" and "proximity of its airport to the courthouse," the same is true of the Northern District of Texas. In addition, North Carolina has no apparent nexus to AT&T or Snowflake as neither of the defendants (AT&T or Snowflake) resides in that district. More fundamentally, no acts took place within, and no witnesses or documents reside in North Carolina. For this successive AT&T data breach, the lynchpin of the action will focus on the actions taken (or not taken) by AT&T and its failure to adopt the more stringent administrative controls that Snowflake offers in its suite of services. Accordingly, for the same reasons the Panel previously transferred the AT&T actions to Texas, it should do so again here for MDL 3124.

To the extent that the Panel believes it would be most convenient and economical to create two distinct MDLs—one focused on AT&T and another focused on Snowflake—it is simplest to consolidate the AT&T-related cases before Judge Brown in the Northern District of Texas. The MDLs (at least concerning AT&T) arise out of common questions of law and fact, concern common claims and relief sought, and have overlapping class definitions. As AT&T argued in its initial response to the First AT&T MDL, "[t]he related complaints here present common factual questions concerning the same data security incident and AT&T's safeguarding of information. The complaints also seek certification of sweeping and overlapping putative classes of customers whose information was allegedly impacted by the security incident." MDL 3114, Dkt. 66 at 4. This remains just as true regarding the Second AT&T MDL.

Moreover, Judge Brown is familiar with the legal and factual issues likely to be raised in these AT&T litigations, which will result in significant efficiency gains for all parties and serve

7

the interests of justice. This fact alone strongly supports his selection. *See, e.g.*, *In re Int. Rate Swaps Antitrust Litig.*, 190 F. Supp. 3d 1364, 1366 (J.P.M.L. 2016) ("The first-filed action in this litigation is pending before Judge Paul A. Engelmayer, who also presides over the potential tag-along actions in the district. We are confident that Judge Engelmayer . . . will steer this litigation on a prudent course."); *In re Ocean Fin. Corp. Prescreening Litig.*, 435 F. Supp. 2d 1350, 1352 (J.P.M.L. 2006) (noting transferee judge had "already developed familiarity with the issues present in [the] docket as a result of presiding over motion practice and other pretrial proceedings in the action pending before her for the past year"). Just as importantly, with the leadership appointed, the AT&T Plaintiffs and MDL 3114 are proceeding efficiently under the direction of Judge Brown. In light of these factors, Judge Brown is plainly the most sensible choice to handle all data breach claims involving AT&T in the consolidated and pending MDLs. Indeed, in the analogous situation involving successive breaches of T-Mobile's systems, the panel agreed that Judge Wimes (who presided over the first T-Mobile data breach MDL) was the logical choice to preside over the second T-Mobile data breach. MDL 3019, MDL 3073. The facts here are much more robust given the temporal proximity of the announcements of the breach and the undeniable fact of the substantial overlap between the class members in each breach. It is simply more efficient to litigate questions of AT&T's conduct regarding the same alleged misconduct and millions of identical class members in one jurisdiction rather than two.

## IV.    CONCLUSION

There is no good reason to transfer actions involving AT&T's data breaches to Montana or North Carolina. AT&T Plaintiffs in the First AT&T MDL respectfully request that the Panel transfer for consolidation or coordination of all actions involving AT&T's data breaches to Judge Brown in the Northern District of Texas for pre-trial proceedings and deny the motion to consolidate any AT&T cases in the proposed Snowflake MDL.

Dated: August 29, 2024	Respectfully submitted,

   /s/ W. Mark Lanier
W. Mark Lanier
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N. Ste. 100
Houston, Texas 77064
Tel: (713) 659-5200
Email: mark.lanier@lanierlawfirm.com

*AT&T Plaintiffs' Lead and Liaison Counsel*

   /s/ James E. Cecchi
James E. Cecchi
**CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
Email: jcecchi@carellabyrne.com

Shauna Itri
**SEEGER WEISS, LLP**
55 Challenger Road
Ridgefield Park, New Jersey 07660
Tel: (973) 639-9100
Email: sitri@seegerweiss.com

Sean S. Modjarrad
**MODJARRAD ABUSAAD & SAID**
212 W Spring Valley
Road Richardson, Texas 75081
Tel. (972) 789-1664
Email: smodjarrad@mas.law

Jean Sutton Martin
**MORGAN & MORGAN**
Mass Tort Dept.
 201 N Franklin Street 6th Floor
Tampa, Florida 33602
Tel. (813) 559-4908
Email: jeanmartin@forthepeople.com

*Members of AT&T Plaintiffs' Executive Committee*

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
Tel: (215) 592-1500
Email: cschaffer@lfsblaw.com

Joseph P. Guglielmo
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor
New York, New York 10169
Tel: (212) 776-8259
Email: jguglielmo@scott-scott.com

Larry A. Golston, Jr.
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama 36104
Tel: (334) 269-2343
Email: larry.golston@beasleyallen.com

Nicholas R. Lange
**FREED KANNER LONDON**
**& MILLEN LLC**
100 Tri-State International Drive, Suite 128
Lincolnshire, Illinois 60069
Tel. (224) 632-4510
Email: nlange@fklmlaw.com

Rebecca L. Solomon
**TOUSLEY BRAIN STEPHENS PLLC**
1200 5th Ave, Ste 1700
Seattle, Washington 98101
Tel. (206) 682-5600
Email: rsolomon@tousley.com

Thomas E. Loeser
**COTCHETT PITRE & MCCARTHY LLP**
999 N Northlake Way, Suite 215
Seattle, Washington 98103
Tel. (206) 970-8181
Email: tloeser@cpmlegal.com

*Members of AT&T Plaintiffs' Steering Committee*